UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DARLENE M. F.[1], | ) |
|          Plaintiff, | ) ) ) |
| v. | ) Case No. 1:21-cv-053 ) |
| KILOLO KIJAKAZI[2], Commissioner of Social Security, | ) ) ) ) |
|          Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Darlene F., on February 4, 2021. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Darlene F., filed an application for Disability Insurance Benefits, alleging a disability onset date of December 18, 2017. (Tr. 15). The Disability Determination Bureau denied Darlene F.'s applications initially on January 3, 2019, and again upon reconsideration on March 8, 2019. (Tr. 144, 160). Darlene F. subsequently filed a timely request for a hearing on March 18, 2019. (Tr. 180). A hearing was held on February 21, 2020, before Administrative Law Judge (ALJ) Stephanie Katich. (Tr. 67). Vocational Expert (VE) Mark Richards also appeared at the hearing. (Tr. 67). The ALJ issued an unfavorable decision on March 17, 2020. (Tr. 15-29). The Appeals Council denied review making the ALJ's decision the final decision of

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

the Commissioner. (Tr. 1-6).

First, the ALJ found that Darlene F. last met the insured status requirements of the Security Act on June 30, 2020. (Tr. 17). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Darlene F. had not engaged in substantial activity since December 18, 2017, the alleged onset date. (Tr. 17).

At step two, the ALJ determined that Darlene F. had the following severe impairments: status-post cervical fusion; lumbar and thoracic degenerative disc disease; headaches; possible seizure disorder versus panic; post-traumatic stress disorder; depression; attention deficit-hyperactivity disorder; and borderline personality disorder traits. (Tr. 17). The ALJ found that the above medically determinable impairments significantly limited Darlene F.'s ability to perform basic work activities. (Tr. 17). Darlene F. also alleged disability due to migraines. (Tr. 17). However, the ALJ indicated that the migraines caused no more than a minimal limitation on her ability to engage in basic work activities, and therefore it was considered a non-severe impairment. (Tr. 17). The ALJ also found Darlene F.'s history of polysubstance abuse to be a non-severe impairment. (Tr. 19).

At step three, the ALJ concluded that Darlene F. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 18-21).

After consideration of the entire record, the ALJ then assessed Darlene F.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop,

> kneel, crouch, and crawl. The claimant could frequently reach overhead, in front, and laterally with the bilateral upper extremities, and she should avoid concentrated exposure to wet, slippery, or uneven surfaces, unprotected heights, and unguarded moving machinery. In addition, the claimant could understand, remember, and carry out simple instructions and tasks. The claimant could make judgments on simple work-related decisions. The claimant could respond appropriately to usual work situations, and can respond appropriately to occasional and superficial interactions with coworkers and supervisors. The claimant should avoid work activity requiring interactions with the general public, and she could deal with routine changes in a routine work setting.

(Tr. 21). The ALJ explained that in considering Darlene F.'s symptoms, she followed a two-step process. (Tr. 21). First, she determined whether there was a physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could have been expected to produce Darlene F.'s pain or other symptoms. (Tr. 21-22). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Darlene F.'s functioning. (Tr. 22).

After considering the evidence, the ALJ found that Darlene F.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 22). However, she found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22).

At step four, the ALJ found that Darlene F. was unable to perform any past relevant work. (Tr. 27). However, the ALJ found jobs that existed in significant numbers in the national economy that Darlene F. could perform. (Tr. 28). Therefore, the ALJ found that Darlene F. had not been under a disability, as defined in the Social Security Act, from December 18, 2017, through the date of the ALJ's decision. (Tr. 29).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.

**20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

      Darlene F. has requested that the court remand this matter for additional proceedings. In her appeal, Darlene F. has argued that the ALJ's RFC was not based upon substantial evidence.

5

Darlene F. specifically alleges that the ALJ erred in evaluating medical opinions in the RFC analysis and in the subjective symptoms analysis. Darlene F. also argues that the adjudication of her claim was constitutionally defective.

Of the two arguments, the court finds it necessary to address only the first and last. First, Darlene F. asserts that her claim's adjudication was constitutionally defective. Darlene F. also asserts that the ALJ improperly analyzed the medical opinion of her treating physician, Dr. Catherine Bast.

### A. Separation of Powers

As an initial matter, Darlene F. asserts that the adjudication of her claim was constitutionally defective because 42 U.S.C. § 902(a)(3) violates the separation of powers by limiting the President's authority to remove the Commissioner without cause. *See* ***Seila Law LLC v. Consumer Financial Protection Bureau***, 140 S. Ct. 2183 (Jun. 20, 2020) (finding it unconstitutional where the single head of an executive agency serves for a longer term than the President and can only be removed from the position for cause). While the Commissioner concedes that the removal clause in 42 U.S.C. § 902(a)(3) violates the separation of powers, this constitutional defect does not on its own support setting aside the denial of benefits. [ECF 22 at 4] (*citing* **Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection**, 2021 WL 2981542 (July 8, 2021) ("**OLC Op.**")).

Deborah F.'s constitutional claim fails for several reasons. First, a majority of the Supreme Court justices who decided ***Seila Law*** found that the removal clause was severable from the other provisions in the relevant statutes that established the Consumer Financial Protection Bureau. *See* at 2207-11, 2245. Therefore, the agency "may continue to exist and

operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President." *Seila Law*, 140 S. Ct at 2207-08; *see also* **Collins v. Yellen**, 141 S. Ct. 1761, 1788 n. 2 (2021) (holding that "[s]ettled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office").

The Social Security Act (SSA) does not prohibit the removal clause from being severed, so the SSA would remain fully functional without the removal clause. *See* **OLC Op**., 2021 WL 2981542 (concluding that the removal clause, though unconstitutional, does not affect the validity of the remainder of the SSA). Therefore, the unconstitutional removal clause would not have invalidated the former Commissioner's actions, "including delegating authority to make benefits determinations or ratifying such delegations." **Bowers v. Comm'r of Soc. Sec.,** 2022 WL 34401, at *7 (S.D. Ohio Jan. 4, 2022).

In order to succeed on this constitutional claim, a claimant must show that the removal clause resulted in some unlawful action which caused harm. "[I]dentifying some conflict between the Constitution and a statute is not enough. They must show that the challenged Government action at issue … was, in fact, unlawful." *Collins*, 141 S. Ct. at 1790 (Thomas, J., concurring). Darlene F. has made no showing of actual harm, and it is difficult to imagine a scenario in which she could claim that the unconstitutional removal clause resulted in an unlawful denial of benefits. *See* **Robinson v. Kijakazi,** 2022 WL 443923, at *6 (E.D. Wis. Feb. 14, 2022); *see also* **Bowers**, 2022 WL 34401, at *8 (citing **Butcher v. Commissioner of Social Security**, 2021 WL 6033693, at *8 (S.D. Ohio Dec. 21, 2021); **Crawford v. Commissioner of Social Security**, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021).

The Supreme Court in *Collins* suggested that compensable harm could be traced to the

unconstitutional removal position if the Commissioner played an active role in the agency action, and if the President would have removed the Commissioner to prevent the agency action if not for the unconstitutional removal provision. **Collins**, 141 S. Ct. at 1788-89; *see also* **Roth v. Kijakazi**, 2021 WL 6062062, at *5, (W.D. Wis. Dec. 22, 2021). Here, Darlene F. does not argue that either the former Commissioner or the former Acting Commissioner played an active role in denying her claim for benefits. Rather, she asserts that neither the ALJ nor the Appeals Council had lawful authority to adjudicate this claim due to the unconstitutional removal clause. Darlene F. cites to no law to support her claim that the unconstitutional removal clause automatically rendered all of the actions of the former Commissioners the SSA unconstitutional. More importantly, she has failed to link the unconstitutional removal clause to the denial of her claims, and she has failed to allege that the clause caused her harm.

Darlene F. cites to **Carr v. Saul**, 141 S. Ct. 1352 (2021) to support her assertion that in constitutional claims, "aggrieved claimants would be entitled to a new hearing before an ALJ without any case-specific showing of harm." [ECF 23 at 15]. She does not cite to any specific portion of the case to support her claims, and a critical reading of **Carr** does not support Darlene F.'s argument. In **Carr**, the Supreme Court examined the narrow issue of whether a claimant was required to raise her Appointments Clause argument in the administrative proceedings, or it would be waived. **Carr**, 141 S. Ct. at 1356 (holding that "[t]he question for the Court is whether petitioners forfeited their Appointments Clause challenges by failing to make them first to their respective ALJs. The Court holds that petitioners did not forfeit their claims"). The Supreme Court also noted that there was no dispute as to the harm that petitioners sustained or that the ALJs on the cases were unconstitutionally appointed. **Carr**, 141 S. Ct. at 1357. Accordingly, there is nothing in **Carr** that supports Darlene F.'s claim that she is not required to show harm to

prevail on a constitutional claim.

Darlene F. does allege that the President would have intervened to stop the former Commissioner or former Acting Commissioner from acting if not for the unconstitutional removal clause. However, even this assertion fails. First, the quote that Darlene F. attributes to President Biden regarding the firing of former Commissioner Saul was actually given by a White House official.³ Moreover, the President's removal of former Commissioner Saul did not indicate that every decision made by an ALJ or Appeals Council during the former Commissioner's tenure was invalid or unconstitutional. Justice Kagan, in her concurrence in *Collins*, recognized that the President's choice of Commissioner of the SSA had very little impact on the result of any individual ALJ or Appeals Council's decision. *Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring) (stating that "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference"). Darlene F. has not shown that the denial of her benefits was the direct result of any actions taken by former Commissioner Saul. Former Commissioner Saul was properly appointed, and under *Collins*, when an agency official is properly appointed, "there is no basis for concluding that any head of the [agency] lacked the authority to carry out the functions of the office." *Collins*, S. Ct. at 1788; *see also Collins*, S. Ct. at 1793 (Thomas, J., concurring) (when an official is properly appointed, "[t]here is thus no barrier to them exercising power in the first instance"). As a result, her constitutional separation of powers claim fails.

Moreover, the ALJ who issued the final decision denying Darlene F.'s claim was not appointed by a Commissioner subject to the unconstitutional removal clause. Instead, the ALJ was appointed by an Acting Commissioner of Social Security, who could be removed at any time

---

³ Nicole Ogrysko, *Biden Fires Saul as SSA Commissioner,* FEDERAL NEWS NETWORK, www.federalnewsnetwork.com/people/2021/07/biden-fires-saul-as-ssa-commissioner/eral (July 9, 2021).

by the President. As such, the unconstitutionality of the removal clause had no impact on this ALJ's appointment, and Darlene F. cannot show that the unconstitutional removal clause rendered the appointment unconstitutional.

### B. Medical Opinion Evidence

Next, Darlene F. argues that the ALJ erred in evaluating the medical opinion of her treating primary physician, Dr. Bast. Dr. Bast provided a medical assessment on December 20, 2019. (Tr. 788-92). She found that Darlene F. would be limited to lifting and carrying ten pounds occasionally and less than ten pounds frequently. (Tr. 788). Dr. Bast stated that repeated actions worsened Darlene F.'s pain. (Tr. 788). Dr. Bast opined that Darlene F. could sit or stand for only twenty minutes at a time, stand or walk for less than two hours total, sit for about two hours total in a workday, would need to walk for five minutes every half hour, and would need to change positions at will. (Tr. 789). Dr. Bast further stated that Darlene F. would be limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; balancing; kneeling; crouching; crawling; and stooping. (Tr. 780). Dr. Bast's opinions of Darlene F.'s postural limitations were based on her spine impairments. (Tr. 790).

Dr. Bast also found that Darlene F. would be unlimited in handling, fingering, and feeling but would be limited to occasional reaching and would have no environmental limitations except for vibration, machinery, and heights. (Tr. 790-91). Finally, Dr. Bast opined that Darlene F. would experience pain severe enough to interfere with attention and concentration for 25% or more of the workday. (Tr. 791).

The ALJ found Dr. Bast's opinion to be unpersuasive "because it was not consistent with or supported by the medical findings." (Tr. 27). The ALJ found that diagnostic imaging showed that Darlene F.'s spine disorder was generally mild to moderate and that her cervical spine

disorder improved following her January 2018 surgery. (Tr. 27). The ALJ further found that neurological treatment records showed improvement on medication and that her spells decreased in number. (Tr. 27). The ALJ also found Dr. Bast's opinion unpersuasive with regard to limitations arising from mental health impairments, noting that Darlene F. reported improvement with medication despite her inconsistency of attending recommended therapy. (Tr. 27).

The SSA's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician, however, the new regulations have done away with this requirement. *See* **20 C.F.R. § 404.1520c** ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources"). Instead, ALJ's must consider all medical opinions based on factors set out by the SSA, with *supportability* and *consistency* being the most important factors for the ALJ to discuss. ***Kaehr v. Saul***, 2021 U.S. Dist. LEXIS 18500, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) (emphasis added). ALJ's can, but are not required to, explain how they evaluated the remaining factors which include the relationship with the claimant and any specializations. **20 C.F.R. §404.1520c**.

The ALJ erred in evaluating Dr. Bast's opinion by cherry-picking evidence in the record. While the ALJ found that "diagnostic imaging showed [Darlene F.'s] spine disorder was generally mild to moderate, (Tr. 27), the evidence included later imaging that showed severe findings. For instance, an x-ray in May 2019 showed cervical spondylosis, straightened lordosis, and degenerative spondylolisthesis. (Tr. 691). Imaging of her cervical spine from July 2017 showed severe disc space narrowing, advanced degenerative disc disease, bilateral neural foraminal stenosis, and broadly based posterior disc osteophyte complex. (Tr. 434). An MRI from October 2019 showed moderate to severe degenerative hypertrophic facet arthropathy and

11

ligamentum flavum thickening/redundancy with facet synovitis and effusions on both sides at L4-L5.  (Tr. 804).  The same imaging also showed marked degenerative facet hypertrophy at L5-S1.  (Tr. 804).  While the remainder of the findings from the MRI were mild to moderate, there were multiple mild to moderate issues at each level.  There was disc degeneration and spondylosis with mild annular bulge at T11-12, degenerative disc space narrowing and spondylosis with disc protrusion and a disc herniation at T12-L1, mild/moderate facet arthritis at L1-L2, chronic disc degeneration and moderate disc bulge with disc protrusion impinging on the right ventrolateral thecal sac and neural foramen at L2-L3, mild disc desiccation and moderate degenerative facet/ligament hypertrophy at L3-L4, and mild desiccation/degeneration at L4-L5.  (Tr. 803-04).  The numerous mild to moderate findings in combination with the marked and severe findings support Dr. Bast's opinion, yet the ALJ simply stated that the imaging found only mild to moderate changes without addressing evidence to the contrary.

Moreover, these imaging results directly contradicted the ALJ's finding that Darlene F.'s cervical spine disorder improved following surgery in January 2018.  (Tr. 27).  The medical record clearly indicated continued degeneration in the cervical spine, even after her January 2018 surgery.  (Tr. 434, 691, 804).  The evidence in the record not only failed to show improvement, but instead showed continued degeneration.  The ALJ impermissibly cherry-picked the evidence by relying only on a single indication of improvement after surgery and imaging to support her decision.  An ALJ "cannot simply cherry-pick facts surrounding a finding of non-disability while ignoring evidence that points to a disability finding."  ***Reinaas v. Saul***, 953 F.3d 461, 466 (7th Cir. 2020) (finding that the claimant cannot "prevail by arguing that the ALJ improperly weighed the evidence" but can prevail if the "ALJ overlooked entire swaths of it").

The Commissioner asserts that the ALJ acknowledged the October 2019 imaging and

found that it did not meet the criteria for a listed impairment at Step 3. The ALJ, however, did not specifically discuss the October 2019 imaging, even at Step 3. Instead, the ALJ cited to twelve exhibits, one of which included the October 2019 imaging. (Tr. 18). The ALJ did no more than state that despite being diagnosed with thoracic and lumbar spine degenerative disc disease and a history of cervical fusion, the evidence did not support the findings needed to meet a listed impairment. (Tr. 18). The ALJ provided no analysis or discussion of the severity of the October 2019 imaging or any of the evidence in the twelve exhibits cited. (Tr. 18). As such, the Commissioner cannot argue that the ALJ properly considered the October 2019 imaging, as the ALJ did not provide the logical bridge required to show that she fully and properly considered the October 2019 imaging.

The Commissioner further asserts that the ALJ acknowledged a May 2019 x-ray showing lumbar spondylosis with anterolisthesis and pars defects, which supported Darlene F.'s subjective complaints of tenderness and pain with range of motion. (Tr. 23). However, that acknowledgment was unrelated to the ALJ's analysis of Dr. Bast's opinion. The ALJ did not discuss the May 2019 x-ray in her evaluation of Dr. Bast's opinion, and she did not provide any analysis in the reference to the May 2019 x-ray. (Tr. 23). Mentioning the x-ray in the medical history does not satisfy the ALJ's requirement to "articulate at some minimal level [her] analysis of the evidence and may not "ignore an entire line of evidence that is contrary to [her] findings." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001), *quoting* **Henderson v. Apfel**, 179 F.3d 507, 514 (7th Cir. 1999), **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000). "[A]n ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Suetkamp v. Saul***, 406 F.Supp.3d 715, 719 (N.D. Ind. Aug. 27, 2019), *citing* **Lopez ex rel. Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ did not articulate any analysis of this

evidence, and merely mentioning the evidence in the medical history does not constitute proper analysis as required by **20 C.F.R. §404.1520c**.

Finally, the Commissioner asserts that the ALJ "need not provide a complete written evaluation of every piece of testimony and evidence …." ***Diaz v. Chater***, 55 F.3d 300, 308 (7th Cir. 1995). While this is true, the ALJ also "cannot simply cherry-pick facts surrounding a finding of non-disability while ignoring evidence that points to a disability finding." ***Reinaas v. Saul***, 953 F.3d 461, 466 (7th Cir. 2020). As discussed above, the ALJ cherry-picked evidence by failing to discuss the imaging contradicting her findings of only "mild to moderate" spine disorder and by failing discuss the supportability and consistency of Dr. Bast's opinion with the evidence in the record as required by **20 C.F.R. §404.1520c.**

Finally, the ALJ discussed neurological and mental health findings to discredit Dr. Bast's opinion of Darlene F.'s physical impairments. (Tr. 27). That analysis, or lack thereof, defies logic. No portion of Dr. Bast's opinion provided any discussion, opinion, or functional limitations related to Darlene F.'s neurological or mental health impairments. The ALJ failed to explain how neurological improvement with medication and mental health improvement with medication provided any insight into Darlene F.'s spinal impairment limitations. In response, the Commissioner asserts that Dr. Bast's opinion that Darlene F. would have good days and bad days meant it was "appropriate for the ALJ to compare Dr. Bast's findings with other parts of the record that might have supported it, such as [Darlene F.'s] history of seizures." [ECF 22 at 20]. However, this, too, defies logic. There was no indication in Dr. Bast's opinion, which only included discussion and opinions related to Darlene F.' spinal impairments, that she was discussing Darlene F.'s neurological or mental health impairments when opining that Darlene F. would have good days and bad days. The ALJ's inclusion of neurological and mental health

14

findings to discredit Dr. Bast's medical opinion was irrelevant, as Dr. Bast's opinion only discussed Darlene F.'s physical impairments.

The ALJ erred both by relying on irrelevant medical evidence to evaluate Dr Bast's opinion and by cherry-picking evidence to find Dr. Bast's opinion unpersuasive. The ALJ also erred in failing to properly evaluate the consistency and supportability of Dr. Bast's opinion. On remand, the ALJ should perform the required analysis of Dr. Bast's opinion.

Darlene F. makes other arguments regarding medical opinion evidence, limitations in the RFC, and her subjective symptoms. However, because the ALJ erred in failing to properly analyze Dr. Bast's medical opinion, the court need not address the additional arguments at this time. The ALJ's dismissal of opinion evidence based on irrelevant evidence, as well as her failure to properly consider opinion evidence, may alter the view of the RFC and other medical opinion evidence. The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 19th day of April, 2022.

/s/ Andrew P. Rodovich  
United States Magistrate Judge